IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LIMITED BRANDS, INC., et al,

PLAINTIFFS,

vs.

CASE NO. C2-04-632
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE TERENCE P. KEMP

F.C. (FLYING CARGO) INT'L
TRANSPORTATION LTD. , et al.,

DEFENDANTS.

## OPINION AND ORDER

This case came on for trial on March 11 through 13, 2008. The Plaintiffs, Limited Brands, Inc. ("Limited"), Mast Industries, Inc. ("Mast") and Victoria's Secret Stores, Inc. ("Victoria's Secret") contend that the Defendant, F.C. Int'l Transportation, Ltd. ("Flying Cargo") is liable for damages under the Carriage of Goods by Sea Act ("COGSA"), 46 App. U.S.C. § 1300, *et seq*. In turn, the Defendant contends that, to the extent it is liable to the Plaintiffs, Cross-Claim Defendants Cargo Connections Logistics, Corp. ("Cargo Connections"), and Palmer Industries, Inc. ("Palmer") are responsible to it for any damages. For the reasons that follow, the Court finds in favor of the Defendant, Flying Cargo, as to the claims brought against it by the Plaintiffs. Consequently, the Court also finds in favor of Cargo Connections and Palmer.

### I.

The parties have stipulated to a number of facts relevant to the issues in this case. Plaintiff Mast is a wholly owned subsidiary of the Limited and sister corporation to Victoria's Secret. Mast arranges for the delivery of manufactured goods to Victoria's Secret at its

Columbus, Ohio locations. In 2003, Mast arranged for the purchase of certain goods from Delta Galil Industries, Ltd., located in Tel Aviv, Israel. Mast in turn contracted with the Defendant, Flying Cargo, for the shipment of 596 cartons of garments from Israel to Columbus, Ohio. The parties entered into an agreement for transport on or about May 21, 2003.

Prior to the contract at issue in this case, Mast had hired Flying Cargo for other transportation services since 1998. During this time, Flying Cargo was hired by Mast for shipments as to goods purchased by Mast in Israel.

While the parties do not dispute the existence of such business relationship, neither party was able to produce a written contract establishing the rights and obligations of the parties regarding the shipment at issue in this case. Mast has presented evidence that it forwarded to Flying Cargo and invitation for bid regarding the period extending from June 1, 2003 through May 20, 2004. While the parties in fact engaged in the kinds of services described in the invitation, no party produced a final written contract as evidence at trial.[1] Evelyn Cohen of Flying Cargo testified that on August 1, 2003 she signed page 12 of the contract proposed in the invitation to bid. This page referred only to delay penalties. Moreover, at the time of signing, the shipment in question had already been lost or stolen.

On May 21, 2003, Delta delivered the goods at issue to the Port of Haifa, Israel for ultimate delivery to Columbus, Ohio. Bills of lading were then issued by Danmar Lines listing Delta as the shipper and the consignee as Mast Industries, Inc. The bills of lading identified Columbus, Ohio as the place of delivery. Plaintiffs presented 49 pages of packing lists

---

[1] Plaintiffs presented some testimony that the parties had entered into a prior written agreement which expired in the spring of 2003 and was to be the basis for a new agreement covering the shipment in this case. No such agreement was produced; the prior agreement covered air, and not sea, transportation.

prepared by Delta, prior to the loading of the container at Delta's factory. (Plaintiffs' Ex. C) Also submitted at trial were 22 pages of invoices issued by Delta to Mast. (Plaintiffs' Ex. D) Plaintiffs also offered 22 pages of Certificates of Origin issued by Delta to Mast describing the goods to be transported. Plaintiffs also submitted the sea waybill detailing the precise weight of the shipment and 22 pages of documents submitted to the United States Customs Service, Department of the Treasury, in connection with the arrangement for passage of the goods at issue.

The record in this case also includes testimony regarding the relationship between Danmar Lines and Flying Cargo. The bills of lading were issued by Danmar Lines, with Flying Cargo listed as agents for the carrier. According to both Yossi Leeran and Evelyn Cohen, both employees of Flying Cargo, Danmar Lines issued bills of lading for Flying Cargo in Israel, while Flying Cargo served as Danmar's agent in the United States. According to Ms. Cohen, neither Danmar nor Flying Cargo ever took possession of the container and merchandise. Ms. Cohen also testified that Flying Cargo was paid to cause the transportation of the goods from Israel to Columbus and that such payment was made with one disbursement. In turn, Flying Cargo was responsible for paying all shippers involved in the transportation.

Once the container arrived at the Maher Terminal in New York City, Cargo Connections was to perform land carriage from New York to Columbus, Ohio. The parties disagree as to how Cargo Connections was selected for such services. According to James E. Pryor of Mast Industries, Cargo Connections was a long-term inland carrier for Mast. Mast negotiated a favorable rate with Cargo Connections and simply passed along to Flying Cargo the option of using Cargo Connections at such favorable rates for land transportation. Pryor testified

-3-

that Flying Cargo was not required, however, to contract with Cargo Connections. In contrast, Ms. Cohen testified that Flying Cargo was required to use Cargo Connections at the direction of Mast. In the invitation to bid sent by Mast and never formally accepted by Flying Cargo, the form to be used by the bidders included categories to be filled in to described proposed rates. The line for ground transportation had the charges already filled in. (Plaintiffs' Ex. 1, page 14) Flying Cargo contends that this establishes Mast's requirement that Cargo Connections be hired. It is undisputed that Flying Cargo was ultimately compensated at an amount which included the fees to be charged by Cargo Connections. It is also undisputed that such amount was a pass through from Mast to Flying Cargo to Cargo Connections.

Cargo Connections contracted with Palmer to transport the container from Maher Terminal to Palmer's container yard in Newark, New Jersey. Thereafter, the container could not be located and the goods at issue were never delivered to Columbus, Ohio. According to the Plaintiffs, the value of the goods was $582,947.62. According to Minerva Calderon, the retail value of the 106,000 bras purchased by Victoria's Secret was $2,356,000.04. Mast seeks the lower of the two numbers as representing the full cost of the loss.

Ms. Calderon testified that the amount claimed by Mast was not the amount Mast paid to Delta, but instead was the selling price from Mast to Victoria's Secret. Mast presented additional testimony from Thomas Fields, a loss prevention specialist employed by Limited Brands. He investigated the loss of the goods and was ultimately able to track down and recover approximately 503 of the 106,000 missing bras. The recovered bras were destroyed and none were resold. No testimony was adduced regarding the condition of the bras at the time of recovery.

In summary, the goods in questions were loaded into the container at the Delta facility. The container itself was then sealed before it was placed on the ship in the Port of Haifa. Delta caused the container to be moved from its factory to the port. Once the container was loaded at the Delta facilities, no other party had knowledge of the contents of the container. No employee of Delta testified as to the packing of the container and no employee of Delta testified as to the method of preparing and storing packing lists, serial numbers or tracking systems.

## II.

The parties agree that the law applicable to this case is found in the Carriage of Goods by Sea Act ("COGSA"), 46 App. U.S.C. § 1300, *et seq.* As the Supreme Court has held ". . . so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage." *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 27 (2004).

In providing for the regulation and carriage of goods by sea, COGSA imposes upon a carrier of goods the duty "to properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." *Id.* at § 1303(2). The statute also requires the carrier to issue a bill of lading containing a description of the goods. *Id.* at § 1303(3). The statute further provides that the bill of lading is *prima facie* evidence that the carrier received the goods as described. *Id.* § 1303(4).

The first issue the Court must resolve is whether Flying Cargo functioned as a carrier or a freight forwarder. This distinction is oftentimes of great importance, since a carrier, as noted above, assumes the duty of care for the goods and is directly involved in the transporting

of the cargo. In contrast, a freight forwarder is an entity which only makes arrangement for transportation of the cargo at the request of the shipper. A freight forwarder, which does not typically issue a bill of lading, is liable only for its own negligence and is not responsible for the ultimate delivery of the goods. *U. S. v. American Union Transport*, 327 U.S. 437, 442-43 (1946).

In a recent decision from this Court, the distinction between carrier and freight forwarder was well analyzed. In *Limited Brands, Inc. v. UTI U. S., Inc.,* Case No. 03-CV-1268, 2005 WL 1629777 (S.D. Ohio July 8, 2005) (King, M.J.), this Court initially held that the determination of whether a party is a carrier or freight forwarder depends on the function performed, and not the terminology used. The Court determined that a number of factors were relevant in determining whether a party acted as a carrier, including, "(1) the way the parties obligation is expressed in documents pertaining to the agreement; (2) the history of dealings between the parties; (3) the issuance of a bill of lading; and (4) how the party made its profit." *Id.* at * 2.

The Court finds that these factors, considered collectively, weigh in favor of a finding that Flying Cargo acted as a carrier, rather than freight forwarder. Although Flying Cargo did not issue the bills of lading, such documents were issued at the direction of Flying Cargo by a company with whom Flying Cargo had a reciprocal agreement as to shipments originating in the United States. In addition, the parties had a history of dealings in which Flying Cargo was responsible for the transportation of goods from Israel to Columbus, Ohio, the ultimate destination of the goods. Finally, the Court notes that Flying Cargo was paid for the costs of transportation from the beginning of the transit to the Columbus, Ohio location. All other

transporting entities were to be paid by Flying Cargo.[2] Weighing these factors as a whole, the Court concludes that Flying Cargo acted as a carrier, as the term is used in COGSA.

Under §§ 1303 and 1304 of COGSA, the owner of the goods establishes a *prima facie* case by demonstrating that the cargo was delivered in good condition, and the goods were either damaged or stolen in transit. *Daewoo Intern. (America) Corp. v. Sea-Land Orient Ltd.*, 196 F.3d 481, 484 (3d Cir. 1999). Were this the end of the analysis, Mast would be entitled to judgment in its favor. A different analysis is used, however, when the goods shipped are in a sealed container, the contents of which are not discoverable from a visual, external examination. *Id.* at 485. A great number of cases have held that in such circumstances, a bill of lading is not *prima facie* evidence of the content of a concealed container. *E.g., Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77 (4th Cir. 2004); *A.I.G. Uruguay Compania de Seguros, S. A. v. AAA Cooper Transp.*, 334 F.3d 997 (11th Cir. 2003); *Plastique Tags, Inc. v. Asia Trans Line, Inc.*, 83 F.3d 1367 (11th Cir. 1996); *Bally, Inc. v. M. V. Zim America*, 22 F.3d 65 (2d Cir. 1994); *Westway Coffee Corp. v. M. V. Netuno*, 675 F.2d 30 (2d Cir. 1982); *Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347 (2d Cir. 1981); *Hoover Motor Exp. Co. v. U. S.*, 262 F.2d 832 (6th Cir. 1959).

In *Bally, supra*, the court held that in the case of a sealed container, the shipper must present evidence establishing that the goods delivered to the carrier were in good order. Reliance upon the bill of sale is insufficient; the shipper must present affirmative evidence

---

[2]The Court has not addressed the first factor expressed in *UTI*, that being the expression of the parties obligations in contract documents accompanying the shipments. As noted above, the record does not establish the existence of a written contract. Further, the testimony regarding prior contracts, which cannot be located, is insufficient to establish the parties' actual intent.

regarding the items placed within the sealed container. *Bally*, F.3d at 69.

In *Old Dominion Freight Lines*, the court analyzed the quantum of evidence necessary to establish the contents of a sealed container.[3] The plaintiff presented an affidavit of its distribution manager who described in detail the process used to ship cigarettes. The affidavit described the procedures employed upon the arrival of a truck, the removal of the product from the distribution center to the loading dock, the confirmation of the shipping order as closed out, the issuance of a bill of lading and the weighing of the product. Nonetheless, the court found that the affidavit made no claim of personal familiarity as to the precise shipment. Further, the court found that the initials on the bill of lading indicated that the employee actually examined the contents of the shipment. Nonetheless, the court concluded that the record did not demonstrate whether the seal was placed on the cargo before or after the defendant's driver had the opportunity to inspect the goods. The court concluded that the plaintiff-shipper had failed to meet its burden of proof as establishing the contents of a sealed container. *Old Dominion Freight Lines*, 391 F.3d at 84-86.

A similar analysis was undertaken in *A.I.G. Uraguay*. In this case, the court noted that in cases involving lost shipments, the burden of proof upon the shipper of a sealed container is quite high. The court noted:

> When the shipment was lost, destroyed, or damaged to such extent
> that it is impossible to tell what was contained in the shipment,
> then the question is not only the original condition of the shipment,
> but also the *contents* of the shipment. When a sealed shipment
> disappears or is destroyed, we cannot tell by looking at the remains

---

[3]While this case arose under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, courts have held that the analysis under this statute regarding bills of lading is identical to COGSA. *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 (2d Cir. 2001).

> of the shipment, if any, what it originally contained. Therefore, we
> have said in these circumstances that we require "direct" evidence
> of the original contents and condition of the shipment to prove a
> prima facie case.

334 F.3d at 1004 (emphasis in original). The court also noted that the term "direct evidence" referred to the testimony of an eyewitness to the loading of the container. *Id.* at 1005. The court also acknowledged that in the modern economy large scale production and rapid loading of goods "are the hallmark of the efficiency sought by our nation's corporations." *Id.* at 1007. From this, the court concluded that eyewitness testimony is not the only method by which proof of the contents of a sealed container may be established. The court found:

> We have never said that eyewitness testimony is the *only* direct
> evidence that will suffice, but we have said repeatedly that
> documentary evidence must be supplemented by other direct
> evidence. However, what we mean to prevent by requiring this
> additional "direct" evidence is having the contents of a sealed
> container proved solely by *after-the-fact* documentation. When
> business records are routinely and systematically made
> contemporaneously with the packing and packaging of a particular
> shipment, and these documents clearly identify the specific
> contents of those shipments, then we perceive no problem in
> accepting that proof as the type able to meet the shipper's burden.
> It is especially so where, as here, there is no incentive for the
> shipper to falsify the packing lists. Accordingly, we find that the
> packing lists, which incorporate pre-loaded serial numbers scanned
> during the process by which the Abiatar order was filled, are
> sufficient direct evidence of the contents of the shipments to
> sustain AIG's prima facie burden.

*Id.* at 1007. The Sixth Circuit has also held that a bill of lading does not provide a prima facie case as to the condition or contents of a container, if the goods were not open to inspection and otherwise visible. *Hoover Motor Exp. Co.,* 262 F.2d at 833-34.

It is clear from the case law that a shipper has a high burden of proof in establishing the contents of a sealed container which could not be inspected by a carrier. A bill of lading is insufficient to make such proof. Earlier cases required eyewitness testimony to meet such burden. While that requirement has been somewhat loosened by the decision is *A.I.G. Uraguay, supra,* it is clear that the packing procedure be precise, measurable, and verifiable by the shipper.

In this case, Mast has failed to meet such burden. It is undisputed that the Plaintiffs have not produced eyewitness testimony regarding the contents of the sealed container. While a number of exhibits were introduced into evidence relating to the packing of the goods together with order forms and certificates of origin, no witness testified as to systems used for packing, the preparation of the documents or the method by which items were counted and placed into the container. The exhibits relating to the items placed in the container were only identified by an employee of Mast, whose work did not involve the verification of the loading of containers, and a witness employed by an import manager hired by Mast, whose work did not include supervision of the loading of containers. These two witnesses were at best able to describe business records used by them in tracking the container and permitting the items through customs. Neither witness gave testimony regarding the procedures used at the point of loading, which is the gravamen of the Plaintiffs' burden of proof. In the absence of any other evidence establishing the contents of the container, Plaintiffs have simply failed to meet their burden of proof on this issue. As such, Plaintiffs fail in the claim for damages against the carrier, Flying Cargo.

Insofar as the Plaintiffs' claim fails against the Defendant, in turn, Flying Cargo's cross-claims against Palmer and Cargo Connection for contribution are rendered moot.[4]

### III.

Based upon the foregoing, the Court finds by a preponderance of the evidence that the Plaintiffs have failed to establish their claim for damages against Flying Cargo. The Court finds in favor of Flying Cargo with regard to the claims of the Plaintiffs and finds in favor of the cross-claim defendant regarding the claims of Flying Cargo. The Clerk is directed to enter judgment in favor of Flying Cargo.

**IT IS SO ORDERED.**

3-31-2008
DATE

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

---

[4]Because the resolution of this issue necessitates judgment in favor of the Defendant, the Court does not address the other issues raised by the Defendant and cross-claim Defendants.